USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: October 26, 2020

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA,           :
                                    :
                                    :           **15 CR 836(VM)**
           -against-                :           **20 Civ. 1151 (VM)**
                                    :                **ORDER**
JOSEPH STEELE,                      :
                                    :
                      Defendant.    :
------------------------------------X

**VICTOR MARRERO, U.S.D.J.:**

    The Clerk of Court is respectfully directed to update Defendant Joseph Steele's address to:

> Joseph Steele #73353-054
> F.C.I. Hazelton
> P.O. Box 5000
> Bruceton Mills, WV 26525

    The Clerk of Court is further directed to mail a copy of this order and its attachments to Defendant.

**SO ORDERED.**

Dated:    New York, New York
            26 October 2020

                                                _/s/ Victor Marrero_
                                                  Victor Marrero
                                                    U.S.D.J.

H23WsteS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                              15 Cr. 836 (VM)

JOSEPH STEELE,

                              Sentence
              Defendant.

------------------------------x

                              New York, N.Y.
                              February 3, 2017
                              3:00 p.m.

Before:

                HON. VICTOR MARRERO,

                              District Judge

                    APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JILAN J. KAMAL
     Assistant United States Attorney

NATHANIEL MARMUR
     Attorney for Defendant

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

H23WsteS

1           THE COURT:  Good afternoon.  Thank you.  Be seated.
2           This is a proceeding in the matter of United States v.
3  Steele, docket No. 15 Cr. 836.
4           Counsel, please enter your appearances for the record.
5           MS. KAMAL:  Good afternoon, your Honor.  Jilan Kamal,
6  for the government.
7           MR. MARMUR:  Good afternoon, your Honor.  Nathaniel
8  Marmur, for the defendant.
9           THE COURT:  The Court notes that the defendant is
10 present in the courtroom seated next to his attorney.
11          The Court scheduled this proceeding as the sentencing
12 of the defendant in this matter.  I have read and reviewed the
13 presentence investigation report dated January 20, 2017, which
14 was prepared in connection with today's sentencing of
15 Mr. Steele.  I've also read the submission from defense counsel
16 dated January 30, 2017, and the submission from the government
17 dated January 21, 2017.  I've also received a letter from
18 defense counsel dated February 3, 2017, just a few minutes ago.
19          Ms. Kamal, did you receive a copy of this letter?
20          MS. KAMAL:  Yes, I did, your Honor.
21          THE COURT:  All right.  Ms. Kamal, has the government
22 read and reviewed the presentence report?
23          MS. KAMAL:  Yes, we have, your Honor.
24          THE COURT:  Does the government have any objections to
25 the report to raise at this time?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

H23WsteS

|     |                                                                           |
| --- | ------------------------------------------------------------------------- |
| 1   |             MS. KAMAL:  We do not.                                        |
| 2   |             THE COURT:  Thank you.                                        |
| 3   |             Mr. Marmur, have you read and reviewed the presentence        |
| 4   | report?                                                                   |
| 5   |             MR. MARMUR:  I have, your Honor.                              |
| 6   |             THE COURT:  Have you had an opportunity to discuss it         |
| 7   | with Mr. Steele?                                                          |
| 8   |             MR. MARMUR:  Yes, we have, your Honor.                        |
| 9   |             THE COURT:  Do you have any objections to raise to the        |
| 10  | report at this time?                                                      |
| 11  |             MR. MARMUR:  No, your Honor, other than I guess               |
| 12  | obviously with respect to the determination of whether he's an            |
| 13  | armed career criminal, as set forth in my letter.                         |
| 14  |             THE COURT:  I will come back to that in a moment.             |
| 15  |             MR. MARMUR:  Yes.                                             |
| 16  |             THE COURT:  Mr. Steele, please rise.                          |
| 17  |             Have you read and reviewed the presentence report?            |
| 18  |             THE DEFENDANT:  Yes.  Yes, your Honor.                        |
| 19  |             THE COURT:  And have you discussed it with your               |
| 20  | attorney?                                                                 |
| 21  |             THE DEFENDANT:  Yes, your Honor.                              |
| 22  |             THE COURT:  You may be seated.                                |
| 23  |             On October 18, 2016, Mr. Steele was found guilty of           |
| 24  | Count One of indictment 15 Cr. 836, felon in possession of a              |
| 25  | weapon, in violation of 18 U.S.C. 922(g)(1).                              |

        Ms. Kamal, does the government have any additional comments in connection with sentencing?

        MS. KAMAL:  We do not, your Honor.  We would rest on our submission.  I would, however, note for the Court it's not an objection to the presentence report, it's just one minor correction to the presentence report.

        THE COURT:  All right.

        MS. KAMAL:  This is in the section of recommendations.  It is at page 22.  It is the paragraph that begins, "We further recommend."  At the end of that paragraph, it notes that there's a search condition based on the defendant's criminal conduct here, which included multiple firearms.  I just wanted to make sure that the record was clear, the government only recovered and he was only charged with one firearm.  I did want to make sure, since this document is one that will follow him, that that was correct.

        THE COURT:  The Court will direct that that correction be made.

        Mr. Marmur.

        MR. MARMUR:  Yes, your Honor.  Mr. Steele has eagle eyes.  He just pointed out to me that on page 21 under justification, the first sentence reflects incorrectly that he pleaded guilty to the charge.  As your Honor noted, he was actually found guilty after trial.  And while it's on my mind, I believe that there was a reference in the PSR, or there may

1  have been a reference, to more than one firing of the weapon,
2  and I believe the evidence showed that there was just one
3  discharge. To the extent that the report has more than one, I
4  believe that should be corrected, and I'll see if I can
5  identify exactly where that was.
6            THE COURT: The Court will direct that those
7  corrections be made as well.
8            Mr. Marmur, do you have any additional comments in
9  connection with sentencing?
10           MR. MARMUR: I apologize. I did just locate it. It
11 was in that same paragraph, under justification, the fourth
12 line down. It says he shot a handgun several times, and I
13 think all the parties would agree that the evidence at trial
14 showed a single discharge.
15           THE COURT: All right.
16           MR. MARMUR: I do have a few brief comments for your
17 Honor. First of all, I want to apologize again with respect to
18 the lateness of the letter I filed today. I wanted to make
19 sure, given some of the confusion in the law, that we had fully
20 preserved Mr. Steele's rights with respect to the ACCA charge,
21 and so rather than just stating it orally, I thought it best if
22 I at least put it down on paper.
23           THE COURT: All right. Why don't we turn to that,
24 Mr. Marmur. The issues you raise conceivably might have an
25 impact on the sentence here. As you point out, the law in this

H23WsteS

1  area is in confusion, to say the least.

2  MR. MARMUR:  It is.

3  THE COURT:  There are cases pending in the Second
4  Circuit that may shed some light and there are cases pending in
5  the Supreme Court, as you indicate, that also may shed light or
6  perhaps confuse it even more.  The question is, however, to the
7  extent you're raising an issue that conceivably might be
8  clarified by any of these appellate decisions, is it prudent to
9  proceed with sentencing or more prudent to wait until those
10 matters are better clarified?

11 MR. MARMUR:  That's a good question, your Honor.
12 Originally, the government and I had discussed the possibility
13 of adjourning sentence until after the Beckles case was decided
14 by the Supreme Court.  Mr. Steele has been in pretrial lock-up
15 now for more than 16 months, and obviously we're not sure when
16 the Supreme Court will decide the Beckles case.  I thought, and
17 I don't want to speak for the government, correctly or
18 incorrectly, that we should go ahead and get Mr. Steele
19 sentenced so he can get to a facility where he can engage in
20 programs and get settled.  I appreciate that by raising the
21 issue I put the Court in a position that it has to decide the
22 issue.  I also recognize that this particular issue can deserve
23 quite a bit of attention, and I'm not sure at the end of the
24 day that substantial briefing would shed more light on it than
25 we have right now.

1     THE COURT:  I would not encourage any briefing at this
2  stage in this court, at this time.
3     MR. MARMUR:  My sense was all of that would be
4  somewhat a fool's errand given that the Supreme Court is soon
5  to decide it.  What I thought at least was that as long as we
6  make sure that we preserve his rights, we don't waive anything
7  with respect to his ability to challenge the ACCA on appeal or
8  potentially collaterally, if necessary, that it made sense to
9  go ahead with the sentencing.  If the law comes out against the
10 defense, then so be it; the issue will have gone away.  If it
11 comes out in favor of the defense, if there's argument there,
12 our position would be we've preserved our right to be able to
13 litigate it.
14     The government can certainly speak for itself as to
15 what position they will take, but I think generally their
16 position has been that if things change in that regard, the
17 defendant should be entitled to at least try to obtain the
18 benefit of the change in law.  Right now the law -- and I don't
19 want to mischaracterize it, there are aspects of it that have
20 been beneficial to the defense; I'm not quite sure that our
21 specific situation fits into what the prevailing law is with
22 respect to New York robbery, in particular the fourth
23 subsection of that which involves a gun, but there have been
24 some very good arguments, and I cited to the Court the <u>Stuckey</u>
25 case before Judge Oetken.

H23WsteS

1        THE COURT:  Judge Oetken, yes.

2        MR. MARMUR:  And he rejected it, so I wanted to be
3   forthright with the Court that I'm not citing a case where the
4   defense has prevailed, but I think even he recognized it was an
5   interesting issue that was created.  I guess it's a long-winded
6   way of saying I think it's in Mr. Steele's best interest to go
7   forward with the sentencing at this time so long as we haven't
8   waived our rights going forward, and that was the purpose of
9   the letter today, just to make absolutely sure of that.  Again,
10  I wish I had put it in earlier so that the Court would have
11  more time to reflect on it, but I wanted to make sure that I
12  hadn't overlooked anything.

13       THE COURT:  All right.  Thank you.

14       Ms. Kamal, does the government have any views on this
15  matter?

16       MS. KAMAL:  Just very briefly, your Honor.  To be
17  clear, the shifting sands around the definition of crimes of
18  violence have affected how robbery in the first degree, which
19  is one of the defendant's predicate offenses, have been handled
20  in this circuit for the purposes of ACCA designation and for
21  career offender designation.  That conversation with defense
22  counsel, both Mr. Marmur and his predecessor, Mr. Marvinny,
23  have been ongoing since the beginning.  It has been the
24  government's position from the outset, from the Jones case,
25  which was issued by the Second Circuit but then vacated, and

now through the pending Beckles case before the Supreme Court, that "robbery in the first degree/displays a firearm" is in fact a qualifying crime of violence for the purpose of ACCA.

The government does also recognize that the law is actively changing and actively under consideration, so to the extent that Mr. Marmur's letter has come late in the day, the government has certainly not been sandbagged in any way by this, and other defendants who have already been sentenced under ACCA, under what may have been now disqualified definitions of crime of violence, have had their opportunity to litigate that. At this point, the government reaffirms its position that "robbery in the first degree/displays what appears to be a firearm" is a qualifying ACCA predicate, but we also recognize the defense's position, that if there were a change in the law that could be beneficial to the defense, if he wishes to preserve the issue for appeal, we certainly would not try to obstruct that.

THE COURT: Thank you.

Mr. Steele, please rise. Is there anything you would like to say on your own behalf before the Court imposes sentence?

THE DEFENDANT: Yes, sir.

THE COURT: You may.

THE DEFENDANT: First of all, I want to bring to your attention, your Honor, that since my release in 2002, I worked

for a security company called Tightwad Security.  I wasn't a
security guard, but I did work in the buildings to report
damages to doors or any part of the building that was damaged,
and I would report that to management, and I did this in
several places around the Bronx: Concord Village; Beekman
Houses; Lafayette Morrison Houses, and Morrisania at 149th.

     From there I moved to Pennsylvania, where I met
Kristie Raffensberger, where I worked for her, and she didn't
pay me the amount that I was supposed to be paid, but I helped
her with many of her properties.  We had fixed walls, paint
walls, do plumbing and do electricity work.  While I was in
prison for my robbery charge, I ascertained the building
maintenance job because I was well equipped to do the job.

     From there, I helped take care of my kids.  Their
mother still requires me to help; been an active father in
their life, taking them to school, going to pick her up.  I'm
going to parents and teachers meetings.

     When I was in junior high school, I had my daughter
DeJenay Fowler.  I wanted to quit school, but I spoke to the
guidance counselor, and she put me in this program where, that
I would work, earn five credits for that, earn credits and get
paid every two weeks and where they had me working at was
Bronx-Lebanon, first division located on 169th, Fulton
division.  I worked there --

     (Defendant and counsel conferred)

H23WsteS

THE DEFENDANT:  And I also want to read something into the record.  I'm not here to place blame on anyone or make somebody look bad, because that's not my intentions, but I had wrote a letter that had been heavy on my heart, and I wanted to write this down just for it to be on record.

"Good afternoon, Judge Marrero.  Thank you for allowing me this opportunity to address the honorable court.  First, I would like to let you know I object to the trial.  I felt like I wasn't granted a fair trial.  I was denied witnesses to testify on my behalf; also evidence to be submitted on my behalf, that would have shined light on the jury's decision-making and deliberation.  I informed my attorney, Mr. Marmur, on many occasions before trial that I wanted Officer Perdomo to be called into trial to testify and be questioned, but my attorney told me, No, you don't need him, it would be a bad -- it would be a bad idea.  But I continued to let my attorney know that I wanted Officer Perdomo to testify all the way up to the day of trial.  But my attorney was determined not to let Officer Perdomo to testify.  And by not letting Officer Perdomo testify, it gave Officer Burgos room to lie on the stand.

I have the right to face my accuser.  I was denied that right.

THE COURT:  Mr. Steele, I'm going to stop you because there was a trial here.  You were found guilty based on the

evidence at trial. If you have difficulties or questions or objections to the verdict, this is not the place in which to retry the case.

THE DEFENDANT: I understand, your Honor.

THE COURT: You can submit motions for habeas corpus or other ways of challenging the verdict, but this is not the occasion to do that.

THE DEFENDANT: I just wanted to, I just wanted to bring stuff to your attention. That's what -- you asked me if I had anything to say.

THE COURT: That's what the posttrial relief mechanism provides, but this is not the occasion to do that.

THE DEFENDANT: Thank you, your Honor, for allowing me to speak.

THE COURT: There is a procedure, Mr. Steele, under 28, U.S. Code, Section 2255 where you can make arguments and raise your challenges to the verdict or to the representation of you in the trial. Mr. Marmur, if you wish, can explain that process to you.

Let's proceed then.

Mr. Marmur, did you have anything else that you wanted to say?

MR. MARMUR: I will be very brief. I don't want to repeat what's in the letter, but just to highlight some things, I think Mr. Steele, despite the fact that he's sitting here

convicted because we didn't win, and I appreciate very much that he may take issue with some decisions, and as your Honor correctly explained, there are other forums for him to try to vindicate that, but even through that, I think we've been able to maintain a very good working relationship, and I've come to know him and like him and respect him.

He had an upbringing which was so unbelievably difficult, it's hard to imagine growing up in an abandoned building, crowded, with lights being turned off, no male role model for him, surrounded by drugs and violence. It would be fair to say he overcame that, because your Honor has before you the presentence report, which does lay out a significant criminal history, but as Mr. Steele was just expressing, he was never lazy. He always worked. Every time he was out, he worked hard, manual labor to support himself and his family.

He has, to his large credit, remained free of alcohol and drugs, something that has plagued many, many people who grew up the way he did, and in the last 16 months, he's been incarcerated at the MCC and the MDC, and despite that and despite preparing for trial, he has shown that he really can follow the rules and even thrive. As I pointed out, his work has been exemplary. He's gotten great reports from the Bureau of Prisons. He earned his GED, I think, shortly before our trial preparation began.

In sum, we're here and he's facing a very, very long

1   time in prison.  I think probation recognizes fairly that 15

2   years is a very long sentence, and in light of all the factors

3   here, it is enough.  He will be in his mid-50s when he's

4   released, and my guess is by then he will have achieved many

5   positive things in jail and will come out as somebody who is

6   very unlikely to recidivate at that age.

7           We would ask the Court to impose the mandatory minimum

8   sentence.  Thank you.

9           THE COURT:  Thank you.

10          In accordance with the decision by the United States

11  Supreme Court in United States v. Booker, while the United

12  States Sentencing Guidelines are not mandatory, the Court

13  nonetheless "must consult those guidelines and take them into

14  account when sentencing."  Therefore, the Court has considered

15  the findings of fact stated in the presentence investigation

16  report as well as the guidelines analysis and the

17  recommendations contained therein.  The Court has weighed this

18  information along with the factors listed in 18 U.S.C. 3553(a)

19  in coming to its final sentencing decision in this case.

20          The Court adopts the factual recitation in the

21  presentence investigation report regarding the criminal history

22  category, offense level, and sentencing range.  Therefore, the

23  Court finds that under the guidelines Mr. Steele's offense

24  level amounts to 33 and his criminal history category falls

25  into category VI.  The guidelines range of imprisonment for

that offense level and criminal history category is 235 to 293 months.

   Mr. Steele was found guilty after trial of one count of being a felon in possession of a weapon.  The probation office has recommended the Court impose a sentence of 180 months.  Subsection (a)(1) of 18 U.S.C. Section 3553 requires that courts take into consideration "the nature and circumstances of the offense and the history and characteristics of the defendant."  Subsection (a)(2) of 18 U.S.C. section 3553 requires that the Court consider the need for the sentence to promote certain objectives of the criminal justice system; namely, punishment, specific and general deterrence, and rehabilitation.  Pursuant to Section 3553(a)(6), the Court is also directed to consider the need to avoid unwarranted sentencing disparities among defendants with similar records and similar offenses in other cases, as well as in connection with the case at hand.

   Mr. Steele, please rise.  Taking into account the nature and circumstances of the offense and the history and characteristics of the defendant, and considering all of the factors listed in 18 U.S.C. Section 3553, the Court finds that a sentence of 180 months is reasonable and appropriate, in that such a term is "sufficient, but not greater than necessary" to promote the proper objectives of sentencing.

   Upon your release from imprisonment, you shall be

Case 1:15-cr-00836-VM   Document 98   Filed 03/06/20   Page 17 of 20        16
H23WsteS

1  placed on supervised release for a term of five years.
2              I will not impose a fine because the Court has
3  determined that you do not have the ability to pay such a fine.
4  However, you are ordered to pay to the United States a special
5  assessment of $100, which shall be due immediately.
6              Ms. Kamal, is there forfeiture in this case?
7              MS. KAMAL:  There is not, your Honor.
8              THE COURT:  Mr. Steele, you must comply with standard
9  conditions 1 through 13 of supervised release and the following
10 mandatory conditions:  You shall not commit another federal,
11 state, or local crime; you shall not illegally possess a
12 controlled substance; you shall not possess a firearm or
13 destructive device; you shall refrain from unlawful use of any
14 controlled substance; you shall submit to one drug testing
15 within 15 days of placement on probation or supervised release
16 and at least two unscheduled drug tests thereafter, as directed
17 by the probation officer.
18             You shall cooperate in the collection of DNA, as
19 directed by the probation officer.
20             In addition, you shall obey the following special
21 conditions:  You shall submit your person, residence, place of
22 business, vehicle, or any other property or electronic devices
23 under your control to search on the basis that the probation
24 officer has reasonable suspicion that contraband or other
25 evidence of a violation of the conditions of supervised release

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

may be found.  The search must be conducted at a reasonable time and in a reasonable manner.  Failure to submit to search may be grounds for revocation.  You shall inform any other residents that the premises may be subject to search pursuant to this condition.

You shall also participate in an outpatient mental health treatment program approved by the United States Probation Office.  You shall continue to take any prescribed medications unless otherwise instructed by the healthcare provider.  You shall contribute to the cost of services rendered based on your ability to pay or the availability of third-party payments.  The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the healthcare provider.

Mr. Steele, do you understand each of these conditions?

THE DEFENDANT:  Yes.  Yes, your Honor.

THE COURT:  You shall report to the nearest probation office within 72 hours of release from custody.  The Court recommends that you be supervised by the district of residence.

In imposing the sentence, I have taken into account a number of considerations:  Mr. Steele's background and circumstances; the difficulty of his development as a child and subsequent difficulties that may have had some role in

1    contributing to his career as a criminal.  I've taken into
2    account indications that Mr. Steele has during incarceration
3    made efforts to rehabilitate himself with education and good
4    behavior.  I also take into account Mr. Steele's age and the
5    statistical indications that at the time that he would be
6    released, the chances of recidivism will be much lower.
7               Mr. Steele, to the extent you have the right to appeal
8    your sentence and you're unable to pay the cost of appeal, you
9    have the right to apply for leave to appeal *in forma pauperis*,
10   meaning as a poor person.  If you make such a request, the
11   clerk of the court must immediately prepare and file a notice
12   of appeal on your behalf.
13              Do you understand your right to appeal to the extent
14   it may exist?
15              THE DEFENDANT:  Yes.
16              THE COURT:  The sentence as stated is imposed.
17              Ms. Kamal, are there any remaining counts or
18   underlying indictments that need to be dismissed at this time?
19              MS. KAMAL:  There are not, your Honor, although it may
20   simply be my poor hearing, but did the Court impose the
21   mandatory special assessment of $100?
22              THE COURT:  Yes.
23              MS. KAMAL:  Thank you, Judge.  Sorry.
24              THE COURT:  Is there anything else, Mr. Marmur?
25              MR. MARMUR:  Two brief points.  One is I just want to

1  make clear -- he wants to say thank you to your Honor, the
2  third brief point.  Because he did go to trial, I believe
3  Mr. Steele would have the right to appeal the verdict and the
4  sentence.  I want the record to reflect that a notice of appeal
5  should be filed; he's directed me to file that and we will
6  challenge both the verdict and the sentence.
7          And the final point, Mr. Steele has family, including
8  two young children, in Pennsylvania, and to the extent that the
9  Court's practice allows a recommendation, we would ask that
10 Mr. Steele be designated either to Fort Dix or to a facility in
11 Pennsylvania to facilitate visits by family.
12         THE COURT:  The Court will so recommend.
13         Thank you.  Have a good day and a good weekend.
14         MR. MARMUR:  Thank you, your Honor.
15         MS. KAMAL:  Thank you, your Honor.
16         (Adjourned)