UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
JOSEPH STEELE,                    :

                     Petitioner,  :

                                  :

          -against-               :

                                  :

UNITED STATES OF AMERICA,         :

                                  :

                     Respondent.  :
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____ February 9, 2021

15 CR 836(VM)
20 Civ. 1151 (VM)
DECISION AND ORDER

**VICTOR MARRERO**, United States District Judge:

On February 5, 2020, petitioner Joseph Steele
("Steele"), proceeding pro se, filed a motion to vacate, set
aside, or correct his sentence pursuant to 28 U.S.C. § 2255.
(See Steele v. United States, No. 20 Civ. 1151 (the "Civil
Docket"), Dkt. No. 1.) On December 1, 2020, after Steele had
filed his motion and the Government had filed its response,
Steele submitted a letter to the Court indicating that he had
been unable to do proper research since March 2020 as a result
of a COVID-19-related lockdown at his facility. (See Civil
Docket, Dkt. No. 13.) The Court subsequently directed the
Clerk to send Steele an application for pro bono counsel.
(See Civil Docket, Dkt. Nos. 14, 16, 18.) Now before the Court
is Steele's application for pro bono counsel and to proceed
in forma pauperis. (See Civil Docket, Dkt. Nos. 15, 19.)
Although Steele's application to proceed in forma pauperis
(Civil Docket, Dkt. No. 19) is GRANTED, for the reasons stated
below, the application for pro bono counsel (Civil Docket,

Dkt. No. 15) is DENIED.

## I.   BACKGROUND

On February 19, 2016, Steele was charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 2. The indictment alleged that Steele had three predicate felonies subjecting him to a sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). The charges stemmed from an incident that took place on October 10, 2015, during which Steele pulled out a gun and fired it during an argument with three other men. On October 28, 2016, following a four-day jury trial, Steele was convicted of this charge.

In his Section 2255 motion, Steele alleges that he was denied effective assistance of counsel when his trial counsel (1) failed to call Vanessa Martinez, a Forensic Criminalist with the NYPD Police Laboratory, to testify; (2) failed to call Officer Perdomo to testify about a glove that Perdomo had recovered from Steele following Steele's arrest; and (3) failed to introduce the glove into evidence. (See United States v. Steele, No. 15 CR 836 (the "Criminal Docket"), Dkt. No. 84, at 4, 8, 11.)

## II.   LEGAL STANDARD

There is no constitutional right to counsel in a habeas action, so it is within the Court's discretion whether to

appoint pro bono counsel. See 18 U.S.C. § 3006A(a)(2)(B) (allowing for appointment of counsel for any financially eligible person when required by "the interests of justice"). The same factors relevant to granting pro bono counsel in civil cases, such as the likelihood of success on the merits, complexity of the legal issues, and the movant's ability to investigate and present the case, must be considered. See, e.g., Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989).

The Second Circuit has stated that pro bono "counsel is often unwarranted where the [pro se litigant's] changes of success are extremely slim, and advised that a district judge should determine whether the pro se litigant's position seems likely to be of substance, or show[s] some chance of success." Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 204 (2d Cir. 2003) (internal quotation marks and citation omitted). Pro se litigants seeking pro bono counsel must "first pass the test of likely merit." Id.

### III. **DISCUSSION**

Though the Court is mindful that COVID-19 restrictions have affected Steele's ability to conduct research, the Court is ultimately not persuaded that Steele has "pass[ed] the test of likely merit." Id. In addition, Steele's case does not raise complex legal issues, and his inability to conduct

research can be mitigated through means other than appointment of counsel. Accordingly, Steele's application for pro bono counsel is denied.

A.    LIKELIHOOD OF SUCCESS

"In order to establish an ineffective assistance claim, a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Cardoza v. Rock, 731 F.3d 169, 178 (2d Cir. 2013). Based on the Court's review of the evidence adduced at trial, as well as Steele's opening Memorandum of Law in support of his Section 2255 motion, the Court finds that Steele is not likely to succeed in demonstrating that the allegedly deficient performance of trial counsel caused him prejudice.

Turning first to the testimony and evidence relating to the glove, the Court does not find it likely that introduction of this evidence raises a "substantial, not just conceivable, likelihood of a different result." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (internal quotation marks omitted). This is because Steele's DNA was not found on the firearm that he allegedly fired. (Trial Tr. at 211-12.) In order to convince the jury that the lack of DNA did not prove that Steele had not handled the gun, the Government introduced expert testimony about how and why DNA is not always fully captured on surfaces including, for example, because someone may shed

fewer skin cells than needed to leave a trace, or the item may have been rubbed to remove DNA. (Id. at 200-05.) Had evidence of the glove been introduced, the Government would have had a much stronger explanation for why Steele's DNA was not found on the gun: he held it while wearing a glove.[1] Thus, although Steele argues that the evidence of the glove would have helped his case, the exact opposite is true: evidence of the glove created a serious risk of harm to Steele's case, and the Court cannot conclude that its exclusion was prejudicial.

Similarly, the Court finds no substantial likelihood of a different outcome had Martinez testified at trial. While defense counsel could have elicited testimony from Martinez establishing that no gunshot residue was found on the jacket Steele was wearing on the night in question (see Criminal Docket, Dkt. No. 58, Ex. A at 4), Martinez's testimony would not have been limited to this finding. The Government would have also questioned Martinez and been able to elicit testimony from her establishing the unreliability of the test results given the inadequate technology used as well as other

---

[1] The glove contained three individuals' DNA, and although Steele was excluded from being "a possible contributor of the major component DNA profile obtained," Steele was not excluded from being a contributor of the "minor alleles present." (Criminal Docket, Dkt. No. 89-1, at 8.) As such, the report ultimately neither confirmed nor denied the presence of Steele's DNA and would not exonerate Steele.

plausible reasons for why gunshot residue was not found on the jacket (i.e., because of the type of fabric the jacket was made of or because any residue had been brushed off while running). (See Criminal Docket, Dkt. No. 59, at 2-3.) While the Court cannot be certain what evidence would have been adduced, it is highly probable that the full scope of her findings and analysis would have been introduced and undermined the probative value of the report. Therefore, the failure to call Martinez as a witness did not prejudice Steele's case.

Moreover, the Government presented multiple other probative pieces of evidence supporting its case. For instance, an eyewitness testified that he saw a man in a burgundy jacket point a gun, and the Government established that Steele was wearing a burgundy jacket. (Trial Tr. at 46-47, 181-83, 185.) While Steele was being chased, Officer Burgos also saw a black object in Steele's left hand and saw him make a swinging motion across his body as he fled, followed by a metallic clattering sound. (Id. at 81-82.) Officer Burgos then found a firearm near where he heard this sound. The shell casing that was fired by the firearm found by Officer Burgos was also found near where Steele was arrested. (Id. at 82, 84, 91, 159, 163-65, 239.) There was also corroborative surveillance video. (Id. at 267-70.) The

weight of this evidence tying Steele to the firearm makes it even less likely that Steele can establish prejudice.

Because Steele's claim is not likely to be meritorious, this factor weighs against appointment of pro bono counsel.

B.    Complexity of the Legal Issues

The Court further finds that Steele's petition does not raise complex legal issues. Steele's claims predominantly require an assessment of whether particular evidence would have affected the jury's decision in light of the other evidence presented by the prosecution. No additional factual development is required, no questions of legal interpretation are raised, and no complicated or novel issues of law must be researched. Therefore, this factor likewise weighs against appointment of counsel.

C.    Ability to Present His Case

Finally, while Steele does lack an ability to conduct research due to COVID-related lockdowns at his facility, this alone is not a sufficient basis upon which to grant pro bono counsel. Because COVID has further restricted the ordinarily limited availability of pro bono counsel, courts have not granted pro bono counsel to similarly situated petitioners who have been affected by COVID restrictions in their facilities. See Murphy v. Warden, No. 20 Civ. 3076, 2020 WL 2521461, at *3 (S.D.N.Y. May 15, 2020); see also Fulton v.

Superintendent, 20 Civ. 21, 2020 WL 3250594, at *4 (S.D.N.Y. June 16, 2020).

Instead, those courts have mitigated the difficulties faced by petitioners by other means. For instance, the Murphy court reminded the petitioner "that it is not necessary to cite case law or make legal arguments in his petition. He only needs to state the relief he is seeking, his grounds for relief, and the facts supporting each ground. Petitioner may hand-write the petition, provided it is legible." 2020 WL 2521461, at *3. In addition, the Fulton court reminded the petitioner that "he may seek assistance from the New York Legal Assistance Group. Additional information can be found online at nylag.org; by calling 212-613-5000; or by emailing info@nylag.org." 2020 WL 3250594, at *4. Alongside these options, another option available to Steele is to seek an extension of the deadline to file his reply, should the need arise.

For the foregoing reasons, the Court finds that appointment of pro bono counsel is not necessitated by the interests of justice. However, in light of the lockdown at Steele's facility, the Court will grant Steele an additional thirty (30) days from the date of this Order to file his reply to the Government's Memorandum in Opposition.

### IV.  ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that petitioner Joseph Steele's application to proceed in forma pauperis (Civil Docket, Dkt. No. 19) is **GRANTED**, but petitioner's application for pro bono counsel (Civil Docket, Dkt. No. 15) is **DENIED** without prejudice.

The Clerk of Court is hereby directed to mail this Order to Joseph Steele, Register Number 73353-054, at F.C.I. Hazelton, P.O. Box 5000, Bruceton Mills, WV 26525.

**SO ORDERED.**

Dated:     New York, New York
           9  February 2021

_____
Victor Marrero
U.S.D.J.